**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

DIAMOND RESORTS INTERNATIONAL, INC., a
Delaware corporation, DIAMOND RESORTS U.S.
COLLECTION DEVELOPMENT, LLC, a Delaware
limited liability company, DIAMOND RESORTS
CORPORATION, a Delaware corporation, and
DIAMOND RESORTS MANAGEMENT, INC., an
Arizona corporation,

        Plaintiffs,

vs.

JUDSON PHILLIPS, ESQ., an individual, WILLIAM
MICHAEL KEEVER, an individual, SEAN AUSTIN, an
individual, CASTLE LAW GROUP, P.C., a Tennessee
professional corporation, CASTLE MARKETING
GROUP, LLC, a Tennessee limited liability company,
CASTLE VENTURE GROUP, LLC, a Tennessee limited
liability company, KIM GRACE, an individual, DONALD
RICHARD FERGUSON ESQ., an individual, ASHLEY
KEEVER, an individual, WORTHINGTON HOLDINGS,
LLC, a Tennessee limited liability company, GOD
CLOUD, LLC, a Tennessee limited liability company,
ADVISANT, INC., a Tennessee corporation;
KRYPTOBIT, LLC, a Tennessee limited liability
company, INSTANT MERCHANT GROUP, LLC, a
Tennessee limited liability company, and EXXOGEAR,
LLC, a Tennessee limited liability company, and EXXO
GEAR GROUP, INC., a Tennessee corporation,

        Defendants.

_____/

CASE NO.: 3:17-cv-01124

JUDGE ALETA A. TRAUGER

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS', CASTLE LAW**
**GROUP, P.C. AND JUDSON PHILLIPS, MOTION FOR PROTECTIVE ORDER**

      Plaintiffs, DIAMOND RESORTS INTERNATIONAL, INC., DIAMOND RESORTS

U.S. COLLECTION DEVELOPMENT, LLC, DIAMOND RESORTS CORPORATION, and

DIAMOND RESORTS MANAGEMENT, INC. (together, "Plaintiffs"), by and through the

undersigned counsel, and pursuant to Fed. R. Civ. P. 26(c), hereby file this Response in Opposition to Defendants', CASTLE LAW GROUP, P.C. and JUDSON PHILLIPS, Motion for Protective Order (Doc. 130) ("Motion"), which Motion seeks protection under the auspices of the attorney client privilege, invoking that as a shield to improvidently prevent all deposition testimony revealing Defendants' illegal and unethical conduct. Tellingly, that Motion not only fails to state why or how the privilege applies, but further omits, with any specificity, what information or documents Defendants' consider privileged. Defendants also seek to hide behind overly broad and unenforceable employment agreements in a last ditch effort to prevent testimony. Defendants should not be permitted to thwart Plaintiffs' right to prosecute their case or otherwise engage in the discovery process. In opposition, Plaintiffs state as follows:

## I.    INTRODUCTION

This Motion is nothing more than a subterfuge intended to suppress testimony that will reveal the nature and extent of Defendants' illegal, nefarious, and unethical activities. Plaintiffs have sued Defendants for damages and injunctive relief arising from a scheme, perpetrated in concert by Defendants, that tortiously interfered with Plaintiffs' contractual relations with its customers and, in the process, defrauded Plaintiffs' customers themselves. Through various forms of deceptive advertising and direct solicitation, Defendants have partnered with third-party affiliates (a/k/a Third Party Exit Companies, hereinafter "TPEs") who provide misleading information to Plaintiffs' customers regarding their timeshare interests and offer to "cancel" any contractual obligations these customers may have in exchange for a fee.

In furtherance of the scheme, Defendants created a "law firm" to act as a front for their enterprise.[1] Defendants' TPEs, posing as agents for "CASTLE LAW GROUP", solicited timeshare owners and marketed the legal services of CASTLE LAW GROUP. *See* Plaintiffs' First Amended Complaint, DE 111 at ¶95. Using CASTLE LAW GROUP as their "law firm front", Defendants' TPEs enticed timeshare owners into engagement agreements with CASTLE LAW GROUP and collected legal fees from these timeshare owners. These legal fees were not received directly by CASTLE LAW GROUP, but instead were shared between the TPE and the non-lawyer owners of CASTLE MARKETING GROUP. *See* Declaration of Laura Blevins, attached hereto as **Exhibit "A"**.

Although posing as a law firm, CASTLE LAW GROUP was actually controlled by two non-lawyers, SEAN AUSTIN and WILLIAM MICHAEL KEEVER. *Id.* According to SEAN AUSTIN, the actual registered owner of CASTLE LAW GROUP, attorney JUDSON PHILLIPS, owned CASTLE LAW GROUP "only on paper". *Id.* JUDSON PHILLIPS has himself submitted a Declaration in a separate action stating that his non-lawyer business partners embezzled funds from CASTLE LAW GROUP. *See* DE 111, Exhibit "5" to Plaintiff's First Amended Complaint, pg. 78 – 83.

The actual services provided by CASTLE LAW GROUP were illusory, and did not constitute any meaningful attorney-client relationship. The undersigned anticipates that the testimony and evidence presented in this action will show that attorneys at CASTLE LAW GROUP rarely if ever met with or spoke to their timeshare owner "clients". Therefore, Defendant's Motion for Protective Order seeking to preserve some form of attorney-client

---

[1] In 2014 non-lawyers SEAN AUSTIN and WILLIAM MICHAEL KEEVER (previously admitted in Alabama, but is now no longer licensed to practice law) posted a Craigslist ad hoping to capture an attorney willing to respond and lend credibility to their scheme. *See* Plaintiffs' First Amended Complaint, DE 111, ¶77-91.

3

privilege is specious (and a blatant attempt to silence adverse witnesses) as CASTLE LAW GROUP's attorneys failed to communicate or take any action on behalf of their "clients" which might fall within the realm of an attorney-client relationship.

In support of this Response in Opposition to Defendants' Motion for Protective Order, the undersigned obtained the Declaration of Johanna Olivares, a Diamond Resorts timeshare owner. The Declaration of Johanna Olivares is attached hereto as **Exhibit "B"**. Ms. Olivares' Declaration indicates that although she was told she was retaining the services of CASTLE LAW GROUP, she never once met with or spoke to any CASTLE LAW GROUP attorney. *Id.* at ¶4-6. Moreover, in 2017 she received a letter from CASTLE LAW GROUP claiming that she never hired CASTLE LAW GROUP at all. *Id.* at 7, 8.

A similar story was told by Diamond Resorts timeshare owner Randy B. McCain. *See* Declaration of Randy B. McCain, attached hereto as **Exhibit "C"**. Mr. McCain was contacted by a CASTLE LAW GROUP affiliate in 2015 and he paid $7,300 under the belief that he was to receive legal representation from CASTLE LAW GROUP. *Id.* at ¶5. Despite numerous attempts to obtain information regarding the status of his case, CASTLE LAW GROUP repeatedly failed to return messages and he was never contacted by any CASTLE LAW GROUP attorney. *Id.* at 7, 8. In 2017, CASTLE LAW GROUP sent Mr. McCain a letter claiming that he had never hired CASTLE LAW GROUP. *Id.* at 11, 12.

Contrary to Defendants' Motion for Protective Order, which erroneously claims that the upcoming depositions will contemplate attorney-client privileged communications, the gravamen of Plaintiffs' claims against Defendants in this action is that Defendants, and CASTLE LAW GROUP in particular, operated as a front that solicited Plaintiffs' customers under the false pretense that they would receive legal representation, when in fact no legal representation was ever

4

provided. Similar to Diamond customers Johanna Olivares and Randy B. McCain, it is anticipated that the discovery conducted in this action will reveal that many, if not all, of the supposed "clients" of CASTLE LAW GROUP received some form of communication from CASTLE LAW GROUP denying any attorney-client relationship. In light of these facts, the assertion by CASTLE LAW GROUP of attorney-client privilege, as a means to shield themselves from adverse testimony from former employees, is particularly specious.

## II.    DEFENDANT'S MOTION FOR PROTECTIVE ORDER

On March 14, 2018 Defendants CASTLE LAW GROUP and JUDSON PHILLIPS filed a Motion for Protective Order seeking to prevent or limit the depositions of three (3) former employees of CASTLE LAW GROUP and/or CASTLE MARKETING GROUP. The depositions of Laura Blevins, a non-lawyer, Christopher Butler, and Wessley Inscoe were coordinated by counsel for Plaintiffs and notice was provided on February 9, 2018, with depositions set to begin on March 27, 2018. Now, less than two (2) weeks prior to these depositions taking place, and more than a month after notices of deposition were provided, Defendants seek to completely preclude or otherwise delay their testimony.

### A.    DEPOSITION OF LAURA BLEVINS

Laura Blevins is a former employee of CASTLE LAW GROUP and CASTLE MARKETING GROUP. Laura Blevins has executed a Declaration that indicates that her role with these companies involved marketing and business development. *See* Exhibit "A" ¶ 7. As stated by Ms. Blevins: "[a]s my primary function, I communicated with and managed outside affiliate companies…who solicited timeshare owners…to cancel their timeshare contracts and then referred that business to the Castle entities." *Id.* Ms. Blevins' observation regarding attorney/client interactions is that no such interactions occurred as attorneys at CASTLE LAW GROUP never met with or spoke to the timeshare owners they supposedly represented. Exhibit

5

"A" ¶ 15.  The scope of Ms. Blevins interaction with timeshare owners involved the numerous complaints she received from timeshare owners who were unhappy with the complete lack of contact from CASTLE LAW GROUP.  Exhibit "A" at ¶ 16, 17, 19, 24.

Ms. Blevins further stated that she only worked for CASTLE LAW GROUP for less than three months before she transferred to CASTLE MARKETING GROUP and was treated as an independent contractor, receiving an IRS Form 1099. Exhibit "A" at ¶2. It was while she was working for CASTLE MARKETING GROUP that she learned of unethical and illegal conduct that ultimately caused her to resign from working for CASTLE MARKETING GROUP. *Id.* Subsequently, Ms. Blevins reported Defendants' illegal and unethical conduct to the FBI, and ultimately to the U.S. Attorney's office, who referred her to the Secret Service, who interviewed her.  Exhibit "A" at ¶3. She also filed a report with the Federal Trade Commission and has spoken with the Tennessee Attorney General. *Id.* The deposition subpoena for Laura Blevins is attached hereto as **Exhibit "D"**.  None of this potential testimony is attorney-client privileged.

## B.  DEPOSITIONS OF WESSLEY INSCOE and CHRISTOPHER BUTLER

Christopher Butler and Wessley Inscoe are licensed attorneys and former employees of CASTLE LAW GROUP.  The anticipated subjects of their testimony involve their personal knowledge of the operations and marketing practices of CASTLE LAW GROUP.   It is anticipated that their testimony will be that they never communicated with Plaintiffs' timeshare owners and therefore there were no attorney-client communications subject to any privilege.  To the extent that CASTLE LAW GROUP's "clients" might be discussed, such questioning would be in the context of Defendants' operations, business model, and overall scheme, not substantively as to legal advice rendered, assuming there was any.  The deposition subpoena for Wessley Inscoe is attached hereto as **Exhibit "E"**.  The deposition subpoena for Christopher Butler is attached hereto

6

as **Exhibit "F"**.

## III.    ANALYSIS

### A.    Purpose

"The attorney-client privilege is 'narrowly construed because it reduces the amount of information discoverable during the course of a lawsuit.'" *Ross v. City of Memphis,* 423 F.3d 596, 600 (6ᵗʰ Cir. 2005) (quoting *United States v. Collis,* 128 F.3d 313, 320 (6ᵗʰ Cir. 1997). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in observance of law and administration of justice." *Upjohn Co. v. U.S.,* 101 S.Ct. 677, 682 (1981). However, "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 685. It is appropriate to recognize a privilege "only to the very limited extent that…excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth." *Trammel v. United States,* 100 S.Ct. 906, 912 (1980)(quoting *Elkins v. United States,* 80 S.Ct. 1437, 1454 (1960)).

"The interpretation of the attorney-client privilege in Tennessee cases appears to be consistent with the Sixth Circuit's observations in *Goldfarb* recognizing that the 'privilege does not envelop everything arising from the existence of an attorney-client relationship.'" *Humphreys, Hutcheson & Moseley v. Donovan,* 568 F.Supp. 161, 175 (M.D. Tenn. 1983)(citing *United States v. Golfarb,* 328 F.2d 280, 281 (6ᵗʰ Cir. 1964)). "[T]o the contrary, the attorney-client privilege is an obstacle to the investigation of the truth and should be narrowly confined." *Id.* "Thus, absent special circumstances, the attorney-client privilege does not prohibit disclosure of the fact or existence of an attorney-client relationship or the dates that services were rendered." *Id.* (citing

7

*Condon v. Petacque,* 90 F.R.D. 53 (N.D.Ill. 1981); *see also State v. Bobo,* 724 S.W.2d 760, 1981 Tenn. Crim. App. LEXIS 434 (Tenn. Crim. App. 1981)(The attorney-client privilege does not apply to the identity of an attorney's client). Nor does the privilege prevent the disclosure of the amounts paid by a client for services. *Humphreys,* 568 F.Supp. at 175 (citing *United States v. Haddad,* 527 F.2d 537, 538-9 (6th Cir. 1975)). Further, communications must be made with the intent that the communication be kept confidential. *See State v. Heakin,* No. M2008-01834-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 132, at *13 (Crim. App. Feb. 16, 2010).

**B.    Defendant maintains the burden of establishing attorney-client privilege.**

The burden of establishing the attorney-client privilege rests at all times on the party asserting it. *Pravak v. Meyer Eye Group, PLC,* 2009 WL 10664851 at *4 (W.D. Tenn. October 22, 2009) (hereinafter referred to as "*Pravak 1")* [2], citing *Ross v. City of Memphis,* 423 F.3d 596, 600 (6th Cir. 2005); *see also State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust,* 209 S.W. 3d 602, 616 (Tenn. Ct. App. 2006) ("To successfully invoke the attorney-client privilege, the party asserting the privilege is obligated to establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential."). Blanket assertions of protection under the attorney-client privilege are "ineffective to preserve these protections". *Pravak 1* at *5 (citing *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995). The party asserting attorney-client privilege must do so with enough specificity to allow the court to make a determination. *Id.*

In Tennessee, the attorney-client privilege is codified in TCA 23-3-105. This statute has been interpreted by the Middle District to apply only if (1) the asserted holder of the privilege is

---

[2] The court in *Pravak* filed two separate opinions both on 10/22/2009. The above cited *Pravak* decision, 2009 WL 10664851, is referenced throughout as "*Pravak 1*". The second opinion, 2009 WL 10665135, shall be referenced throughout as "Pravak 2". Of note, LexisNexis incorrectly provides the Westlaw citation for *Pravak 1* in its version of the *Pravak 2* opinion. The *Pravak 2* opinion on LexisNexis is located at 2009 U.S. Dist. LEXIS 136795.

or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Humphreys,* 568 F. Supp. 161 at 175. *See also United States v. Golfarb,* 328 F.2d 280, 281 (6th Cir. 1964) (similar federal common law equivalent), citing 8 Wigmore, Evidence § 2292 at 554 (McNaughton rev. 1961)).

In *Goldfarb,* an attorney refused to answer certain questions before a grand jury on the grounds that the attorney-client privilege prohibited the disclosure of not just communications made to the attorney by the client in confidence, but should be extended around "all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *Goldfarb,* 328 F.2d at 281. In rejecting this broad extension of the attorney-client privilege, the Sixth Circuit stated that "[t]he extension of the rule…would do violence to the purpose and history of the privilege. The rule is designed to enable a client to confide in his attorney, secure in the assurance that there will be no disclosure. **The privilege does not envelope everything arising from the existence of an attorney-client relationship.**" *Id.* at 282 (emphasis added). By example, communications made to an attorney in the course of their professional employment by persons *other than client or his agent* were held by the Sixth Circuit to not constitute privileged communications. *Id.* Because the communications at-issue in *Goldfarb* "did not call for disclosure by [the attorney] of anything said to him by his client", the Court held that

questions regarding those communications did not call for answers within the purview of the attorney-client privilege.  *Id.*

### C. Defendants' Motion Fails To Establish Any Basis to Preclude the Adverse Testimony of Former Employees.

Defendants' Motion for Protective Order seeks to preclude the adverse testimony of three (3) former employees of CASTLE LAW GROUP and/or CASTLE MARKETING GROUP on the grounds that (1) such testimony would violate the attorney-client privilege, and (2) that these employees signed non-disclosure agreements preventing them from disclosing firm or client information, including marketing, business procedures and processes.  *See* DE 130.

### i. Attorney-Client Privilege

With regard to the assertion of attorney-client privilege, as a preliminary matter, Defendants' Motion fails to state the basic elements required to assert such privilege, including (1) the attorney-client relationship at-issue, and (2) the confidential attorney-client communications to which the privilege should apply.  Therefore, Defendants' Motion on its face fails to meet Defendants' burden of establishing that any communications even occurred within the context of an attorney-client relationship.

Second, as described above, Plaintiffs proffer that the evidence and testimony in this case will show that CASTLE LAW GROUP was a ruse, and that CASTLE LAW GROUP itself disclaimed any attorney-client relationship with the timeshare owners it solicited.  Defendants' Motion is lacking of any information as to the clients and communications it intends to protect, and in fact, by their own admission, they have disavowed any such relationship.

Paragraph 1 of Defendants' Motion describes some of the categories of documents from the Subpoena Duces Tecum.  Defendants make no argument that any of the documents requested contemplate protected attorney-client communications.  In fact, the documents requested, and the

10

testimony to be adduced, relate not to the individualized facts and confidential communications associated with any particular timeshare owner seeking legal advice. Rather, they focus instead on the business practices and processes of CASTLE LAW GROUP, including information related to marketing, collection of fees, employment agreements, policies and procedures, and lead lists. Defendants have stated no basis as to why these documents and their subject matter would be protected under the attorney-client privilege. As in *Goldfarb*, the documents sought and testimony to be adduced in the depositions at issue "[do] not call for disclosure by [the attorney] of anything said to him by his client." *Id.* at 282. Therefore, the Court should follow *Goldfarb's* holding and rule that questions regarding documents sought and the related testimony to be adduced in the depositions at issue, do not call for information within the purview of the attorney-client privilege. *See Id.*

Defendants also state, without further explanation or citation, that the privilege extends to non-attorney employees and inter-office communications. DE 130 pg. 3. But as recognized in *Sid Mike 99, L.L.C. v. Suntrust Bank*, No. 2:07-CV-02453-STA-dkv, 2009 U.S. Dist. LEXIS 93364 (W.D. Tenn. Oct. 6, 2009):

> Under Tennessee law, if 'the person to whom the communication was made is a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer,' then attorney-client privilege applies. . . . 'Examples of such protected subordinates would include any law student, paralegal, investigator or other person acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege. . . .' *Id.* at *11-13.

Non-attorney employee Laura Blevins was not hired as a paralegal, was not subordinate to any attorney, and in no way was acting as a lawyer, in performing her duties with respect to marketing and business development. *See* Exhibit "A" ¶2, ¶4, ¶7 ("During my tenure with either company, I was not a licensed attorney nor was I supervised or subordinate to any licensed attorney."); *see*

11

*also Humphreys,* 568 F. Supp. 161 at 175 (the privilege applies only if the communication was made to a member of the bar or their subordinate). Thus, any information or communication gleaned merely by virtue of her employment is not privileged. *See Sid Mike 99, LLC,* 2009 U.S. Dist. LEXIS 93364 (W.D. Tenn. Oct. 6, 2009)*; See also Ajose v. Interline Brands, Inc.*, No. 3:14-cv-1707, 2016 U.S. Dist. LEXIS 162617 (M.D. Tenn. Nov. 23, 2016) (email held not to be privileged where paralegal was copied on email, but no legal advice was dispensed or requested in the email thread).

Furthermore, and as discussed above, Ms. Blevins testimony will center on what she learned while in her role involving CASTLE MARKETING GROUP, not CASTLE LAW GROUP. *See* Exhibit "A" ¶2, ¶7 (Ms. Blevins worked at Castle Law for less than 3 months, and only in her role involving marketing and business development). In *Pravak v. Meyer Eye Grp, LLC,* 2009 U.S. Dist. LEXIS 136795, 2009 WL 10665135 (W.D. Tenn. October 22, 2009) (hereinafter "*Pravak 2"),* the Court considered the issue of whether a former employee could testify regarding her personal observations of a medical office when she had previously worked both (1) at the medical office, and (2) in a separate prior role, as a paralegal for the attorney representing that medical office's doctor. The doctor moved to exclude the former employee from testifying at trial on the grounds that she was a former paralegal for the doctor's attorney. *Pravak 2* at *3. In permitting the former employee/paralegal to testify as to the facts and information which she learned through her own observations in her role with the doctor's medical office, the Court in *Pravak 2* noted that to exclude the employee/paralegal "from testifying at all would extend the attorney-client privilege protection beyond the time in which [the employee/paralegal] worked for [the law firm] to cover those times when [she] worked directly for [the doctor]." *Id* at *9. In the instant case, the potential implication of Ms. Blevins brief time as an employee of Castle Law

12

Group is even less significant than the facts of *Pravak 2* as (1) Ms. Blevins was not a paralegal, (2) her duties at CASTLE LAW GROUP related to marketing and business development, and (3) her anticipated testimony regarding the unethical conduct of Defendants is based upon her observations made while working for CASTLE MARKETING GROUP, not CASTLE LAW GROUP. *See* Exhibit "A" ¶2.

In addition, as admitted in Defendants' Motion, the attorney-client privilege belongs to the client, not the attorney. Doc. 130, ¶3. See *Fausek v. White,* 965 F. 2d 126, 132 (6th Cir. 1992) (the client, not the attorney, is the holder of the privilege). However, Defendants' Motion then erroneously claims that counsel for Plaintiffs stated during a March 13, 2018 discovery conference that the attorney deponents (Chris Butler and Wessley Inscoe) waived the attorney-client privilege. This is simply not true. First, counsel for Plaintiffs never stated that these deponents waived a privilege. Second, as the privilege is held by the client, these attorneys are unable to waive the attorney-client privilege without the consent of their client.

Furthermore, in the unlikely event that the depositions stray into information areas actually subject to attorney-client privilege, Defendants still have an opportunity to object and place the objections on the record for further determination by the Court, as necessary. The appropriate remedy is not to prospectively prevent the depositions entirely from going forward, as Defendants' Motion seeks. Accordingly, it is clear that Defendants' Motion is nothing more than a last ditch attempt to delay or stall the depositions of former employees who are likely to provide testimony adverse to Defendants' interests.

ii.     **The Agreements Do Not Preclude Testimony In This Action**

a.  **The Non-Disclosure Provision in the Agreements is Unenforceable Because the Enforcement Would be Contrary to Both Law and the Public Policy of Tennessee.**

As an alternative basis to preclude the testimony of these former employees, Defendants' Motion attaches broad non-disclosure agreements, which were purportedly executed by each of the deponents during the course of their employment. Under Defendants' theory, the execution of an agreement by an employee that precludes the employee from divulging "business information such as marketing, distribution details, business procedures and processes" somehow acts to shield the company or its employees from testifying in response to a federal subpoena in a civil action.

Under Tennessee law, an employer has a legitimate interest in enforcing a non-disclosure/confidentiality provision to keep its former employees from using the former employer's trade or business secrets or other confidential information in competition against the former employer. *Vantage Tech., LLC v. Cross,* 17 S.W.3d 637, 645 (Tenn. Ct. App. 1999).

As the Tennessee Court of Appeals summarized:

> An employer has a legitimate business interest in keeping its former employees from using the former employer's trade secrets or other confidential information in competition against the former employer. . . . Our courts have stated that a trade secret consists of any formula, process, pattern, device, or compilation of information that is used in one's business to gain an advantage over competitors who do not use it. . . . The subject matter of a trade secret must be secret and not well known or easily ascertainable. . . . Confidential information, like trade secrets, does not include information that is generally available in the trade or easily available from sources other than the employer, such as customer lists, knowledge of the buying habits and needs of particular clients, pricing information, and profit and loss statements. . . .

*Hinson v. O'Rourke*, No. M2014-00361-COA-R3-CV, 2015 Tenn. App. LEXIS 685, at *8-9 (Ct. App. Aug. 25, 2015).[3]

---

[3] Under Tennessee law, the terms "trade secret" and "confidential information" are used as synonyms and they are akin to each other. *See Selox, Inc. v. Ford*, 675 S.W.2d 474, 474-75 (Tenn. 1984) (finding that an agreement requiring an employee to keep information confidential was unenforceable because the information at issue did not constitute

14

In other words, an employer may legitimately invoke, and seek to enforce, a non-disclosure/confidentiality provision against a former employee to protect the employer's competitive interests and trade secrets. That, however, is not the case here.

Movants, in their Motion for Protective Order, do not seek to protect the competitive interests or trade secrets of CASTLE LAW GROUP by enforcing the Non-Disclosure provision. Rather they are attempting to use the Non-Disclosure provision to silence three witnesses and to prevent them from providing truthful, necessary and probative evidence at a deposition.[4]

Under Defendants' theory, the execution of a broad and all-inclusive non-disclosure agreement effectively shields the company from testimony in response to a subpoena in a civil action or otherwise. Such a comprehensive and total gag on testimony or providing evidence regarding a company's actions by a former employee would be an incredible stretch as compared to a legitimate and enforceable non-disclosure limitation. Not surprisingly, Defendants offer no legal support for this startling proposition. They merely cite a single case that an employer can sue for violation of a legitimate and enforceable non-disclosure obligation. The lack of support for Defendants' extremely broad brushed and overreaching agreement is understandable. The agreements are clearly unenforceable.

As discussed below the three identical, overbearing, non-disclosure agreements upon which Defendants attempt to rely are not enforceable under controlling Tennessee law and further any such enforcement would be against public policy.

---

trade secrets); *Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990); *Venture Express v. Zilly*, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998).

[4] If the true intent of Movants was consistent with the above-described law in Tennessee, the depositions of these three witnesses would proceed and Defendants could object to any question which seeks information that constitutes a trade secret or the disclosure of which would harm the CASTLE LAW GROUP'S competitive business interests.

15

**Laura Blevins Agreement**

All three individuals and witnesses who are the target of Defendants' Motion for Protective Order, namely Laura Blevins, Christopher Butler and Wessley Inscoe entered into agreements with CASTLE LAW GROUP which contain Non-Disclosure provisions (DE 130-1, agreement at Paragraph 4.B). Of these three witnesses, only Laura Blevins is not an attorney. This argument will initially address the Non-Disclosure provision as it applies to Laura Blevins and then turn to the application of that provision to Mr. Butler and Mr. Inscoe, because there are additional and important considerations regarding how the Non-Disclosure provision affects those two individuals as attorneys.

First, the Non-Disclosure provision is unenforceable because it goes well beyond the scope of what former employers can seek to protect from disclosure by their former employees. In that regard, the Non-Disclosure provision states that Ms. Blevins owes "certain broad fiduciary duties and responsibilities to [CASTLE LAW GROUP'S] Clients, including but not limited to the duty to keep absolutely all Client related information, data, files, communications and work product completely secret and confidential." The Non-Disclosure provision seeks to protect an extremely broad range of information which belongs to CASTLE LAW GROUP'S "clients," such as CASTLE LAW GROUP'S "clients" "plans, designs, drawings, slogans, texts, product, logos, imaging, ideas, practices, processes, systems, services, inventions, improvements and developments…" CASTLE LAW GROUP cannot place obligations on Ms. Blevins, related to its "clients" through the vehicle of an agreement solely between CASTLE LAW GROUP and Ms. Blevins. While CASTLE LAW GROUP may legitimately protect information of CASTLE LAW GROUP which is truly trade secret information through the vehicle of a valid non-disclosure provision, it may not extend that protection to the information of a third party, its "clients." *See*

16

*footnote 3.* This is because the Non-Disclosure provision, when applied to CASTLE LAW GROUP'S "clients," does not protect the competitive interests of CASTLE LAW GROUP itself and the client information clearly does not constitute a trade secret of CASTLE LAW GROUP.

Second, the Non-Disclosure provision is unenforceable because the non-disclosure period is temporally overbroad and unreasonable and is in excess of what is necessary to protect any competitive interests and trade secrets of CASTLE LAW GROUP. The provision imposes a non-disclosure obligation on Ms. Blevins which lasts "for a period of fifteen (15) years following termination of this Agreement." The Non-Disclosure provision generally describes the information which is subject to its terms as "privileged information," "proprietary information," "confidential information." Even information which is truly privileged, proprietary or confidential (which we do not believe there is any here) loses these characteristics after just a few years of use by a business. It is unreasonable to extend this non-disclosure obligation for fifteen years and there is no competitive interest of CASTLE LAW GROUP which is served by this overbroad and unreasonable non-disclosure period. "[C]ourts will enforce non-disclosure covenants only if they contain reasonable geographical and chronological limitations, they attempt to protect confidential information, and they make reasonably necessary restrictions for the protection of a proprietary interest. . . ." *Trailer Leasing Co. v. Assocs. Commer. Corp.*, No. 96 C 2305, 1996 U.S. Dist. LEXIS 9654, at *17 (N.D. Ill. July 9, 1996) (a non-disclosure agreement found to be unenforceable where the agreement contained no geographical limitation and sought to prevent the defendant from disclosing "any methods and manners" of the employer's business regardless of whether the method or manner is confidential); *see also Lasership, Inc. v. Watson*, 79 Va. Cir. 205, 215 (Cir. Ct. 2009).

17

Third, the Non-Disclosure provision, in defining the information which is subject to non-disclosure states that the term "shall be interpreted as broadly as possible to mean and include any and all past, present and future data, information, correspondence, communications, discussions, conversations …" Also, and as described previously, the Non-Disclosure provision seeks to protect a wide range of CASTLE LAW GROUP's "clients'" information, including plans, designs, drawings, slogans and logos. The information sought to be protected by the Non-Disclosure provision, as described above, goes far beyond what is necessary to protect the competitive interests of CASTLE LAW GROUP or its trade secrets. Indeed, the language would effectively foreclose a former employee from saying anything about the company and its activities to anyone, for any reason and under any circumstances. It would be difficult to imagine a more broad, overreaching and onerous non-disclosure provision.

Fourth, the Non-Disclosure provision is unenforceable, as it is impossible to comply with. The provision attempts to restrict Ms. Blevins from using "any and all experience, knowledge, information…" disclosed to her during her employment because that experience, knowledge and information "is and are intended for sole and <u>exclusive</u> use of [CASTLE LAW GROUP] and its Clients…" Such a requirement is impossible for Ms. Blevins to comply with in relation to any new employment she procures, because if it were enforced, it would limit her ability to use certain vaguely described, "experience, knowledge and information" in relation to her new employment. This provision is a *de facto* non-competition provision which is disfavored under the law. It is not necessary to protect the competitive interests of CASTLE LAW GROUP or to protect its trade secret information. Also, since Ms. Blevins only worked for CASTLE LAW GROUP for approximately 75 days, such a provision is even more extreme and unreasonable. Moreover, Ms. Blevins executed the agreement **after** she had begun her employment with CASTLE LAW

GROUP and therefore the Non-Disclosure provision is not supported by sufficient consideration to permit its enforcement. *Cent. Adjustment Bureau, Inc. v. Ingram*, 678 S.W.2d 28, 33-34 (Tenn. 1984); *Vaugh v. Weems*, No. 01A01-9407-CV-00324, 1994 Tenn. App. LEXIS 712, at *6 (Ct. App. Dec. 7, 1994).

Fifth, the Non-Disclosure provision is unenforceable as it violates the public policy of Tennessee. As argued by Defendants, the Non-Disclosure provision would preclude Ms. Blevins from testifying in response to a federal subpoena regarding CASTLE LAW GROUP's operations and activities in relation to the pending civil litigation. It further violates public policy by seeking to prohibit Ms. Blevins from providing any information related to CASTLE LAW GROUP and its operations to governmental authorities and/or agencies. The provision prohibits Ms. Blevins from disclosing information related to CASTLE LAW GROUP or its activities to a governmental agency that may have an interest in or may be investigating a complaint against CASTLE LAW GROUP. She would also be effectively barred from engaging in whistleblower activity in relation to unlawful, unethical and criminal conduct of CASTLE LAW GROUP or its representatives. Such is a violation of Tennessee law, and, therefore, the Non-Disclosure provision is unenforceable.

In fact, if this Non-Disclosure provision were enforced, Ms. Blevins would have been precluded from the whistleblower activity related to CASTLE LAW GROUP in which she has already engaged. According to Defendants, she could now be retaliated against and sued by CASTLE LAW GROUP for having contacted and spoken to the authorities. Well before Ms. Blevins was involved in this case, she contacted the U.S. Federal Bureau of Investigation in relation to the unethical, and what she believed to be illegal, conduct of the Defendants and CASTLE LAW GROUP. See Exhibit A, ¶ 3. She also contacted the U.S. Attorney's Office who,

19

in turn referred her to the U.S. Secret Service, who interviewed Ms. Blevins in relation to her complaint. *Id.* Due to the unethical nature of Defendants conduct, Ms. Blevins also made a report to the Tennessee Board of Professional Responsibility. *Id.* Ms. Blevins also filed a report with the Federal Trade Commission and has spoken to the Tennessee Attorney General about Defendants' and CASTLE LAW GROUP's activities. *Id.* Clearly, Defendants' argument that the non-disclosure agreements would preclude such legitimate, good faith whistleblower activities or that she could be sued by CASTLE LAW GROUP for having done so, unequivocally demonstrates that the arguments fly in the face of the long-established public policy of the state of Tennessee.

"[C]ourts should carry out the terms bargained for in the contract unless those terms violate public policy." *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 464-65 (Tenn. Ct. App. 2009). "Even if the overall purpose of a contract is not improper, a particular term of the contract may violate public policy." *Id.* at 465. "Tennessee's public policy is reflected in its constitution, statutes, judicial decisions, and common-law rules." *Hodge v. Craig*, 382 S.W.3d 325, 337 (Tenn. 2012). Tennessee case law and the Tennessee Public Protection Act evince Tennessee's public policy for reporting illegal or unethical activity. *See Werlein v. Brink's Home Sec., Inc.*, No. 3:04-0911, 2005 U.S. Dist. LEXIS 35785, at *21 (M.D. Tenn. Dec. 13, 2005).

The Non-Disclosure provision is void as against public policy in Tennessee because it not only would have prohibited Ms. Blevins from engaging in her previous whistleblower activities, but if enforced now, it would effectively preclude her from participating in, or being a part of, the ongoing investigations she initiated into the Defendants' and CASTLE LAW GROUP's unlawful, unethical and illegal conduct.

Sixth, if the Non-Disclosure provision is enforced, Ms. Blevins would be precluded from providing truthful, necessary and probative evidence in this case at her deposition and otherwise.

In that regard, Defendants are effectively asking this Court to enjoin Ms. Blevins completely from providing any sworn testimony in this case, which is a violation of Tennessee law. "Tennessee contempt statutes manifest a clear public policy that a lawfully issued subpoena be honored." *Willard v. Golden Gallon-TN, LLC*, 154 S.W.3d 571, 576-77 (Tenn. Ct. App. 2004); *see also Givens v. Mullikin*, 75 S.W.3d 383, 408 (Tenn. 2002) (finding that a physician cannot withhold confidential information pursuant to an implied covenant of confidentiality "in the face of a subpoena or other request cloaked with the authority of the court" because "such contract would be contrary to public policy as expressed in the rules governing pre-trial discovery and in the relevant medical confidentiality statutes").

For the foregoing reasons, the non-disclosure agreement is obviously unenforceable as against Ms. Blevins. As discussed below, for these same reasons and additional reasons, the agreements are unenforceable as to former employees Mr. Butler and Mr. Inscoe as well.

**Christopher Butler and Wessley Inscoe Agreements**

Mr. Butler and Mr. Inscoe both signed agreements with CASTLE LAW GROUP which are identical to that of Laura Blevins. Therefore, for all the reasons stated above the Non-Disclosure provisions are also not enforceable against Mr. Butler and Mr. Inscoe. More importantly, because Mr. Butler and Mr. Inscoe are both attorneys, there are additional and important reasons why the Non-Disclosure provision cannot be enforced against these two witnesses.

Tennessee law provides that any restriction which infringes on a lawyer's responsibility to assist the legal profession in fulfilling its duty to make legal counsel available are against public policy. *Spiegel v. Thomas, Mann, & Smith, P.C.*, 811 S.W.2d 528, 530 (Tenn. 1991); *Arena v. Schulman, LeRoy & Bennett, P.C.*, 233 S.W.3d 809, 812-13 (Tenn. Ct. App. 2006). Indeed, the

Tennessee Rules of Professional Conduct forbid non-competition agreements for lawyers. Rule 5.6 provides: "A lawyer shall not participate in offering or making…a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship…." *See also Spiegel v. Thomas, Mann & Smith, P.C.*, 811 S.W.2d 528 (Tenn. 1991)(finding provision of agreement that denied deferred compensation to departing shareholders who continued to practice law to be void as against the public policy of Tennessee); *Arena*, 233 S.W.3d 809 (finding agreement containing significant economic disincentive to practice law in Davidson County following voluntary withdrawal from law firm to be an impermissible restraint on the practice of law). The Non-Disclosure provision impermissibly infringes on the responsibility of Mr. Butler and Mr. Inscoe to assist the legal profession in fulfilling their duty to make legal counsel available and unlawfully restricts their ability to practice law after leaving CASTLE LAW GROUP.

The unreasonable and overbroad restrictions of the Non-Disclosure provision, as described above, infringe and hinder the ability of Mr. Butler and Mr. Inscoe to practice law after leaving CASTLE LAW GROUP and to their ability to make their services available to clients, generally and to CASTLE LAW GROUP's clients, specifically. This is most clearly evident in the section of the Non-Disclosure provision which states that "any and all experience, knowledge, information …" that was disclosed to the two lawyers during their employment with CASTLE LAW GROUP, "is and are intended for sole and <u>exclusive</u> use of [CASTLE LAW GROUP] and its Clients …" The provision also states that the two lawyers, for a period of 15 years after they leave CASTLE LAW GROUP, will not "disclose or make available to any person, entity, **law firm**, **lawyer**, business concern or other enterprise …" any such experience, knowledge, information or other privileged, proprietary or confidential information. (emphasis added). This restriction alone

infringes on and limits the responsibility of Mr. Butler and Mr. Inscoe to assist the legal profession, including their subsequent practice, in fulfilling their duty to make legal counsel available. It is also a *de facto* non-competition provision which limits their ability to practice law after leaving CASTLE LAW GROUP.

Also, the overbroad and unreasonable restrictions in the Non-Disclosure provision violate public policy as they preclude both attorneys from being able to comply with their ethical obligations of having to report professional misconduct under Rule 8.3 of the Tennessee Rules of Professional Conduct. Rule 8.3(a) provides "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the Disciplinary Counsel of the Board of Professional Responsibility." RPC. 8.3(a).

For these additional reasons, the Non-Disclosure provision is further contrary to Tennessee public policy as it applies to Christopher Butler and Wessley Inscoe.

Defendants in their Motion for Protective Order are not seeking to enforce the Non-Disclosure provision to protect CASTLE LAW GROUP's competitive interests or trade secrets. Instead Defendants are using that provision to silence these three witnesses who have information about Defendants' operations and activities which is damaging to Defendants' interests in this civil lawsuit and may also possibly involve potential criminal and ethical implications. The Court should deny the Motion for Protective Order and allow the depositions of these three witnesses to proceed as scheduled. If there are any valid objections that Defendants believe they have to any of the deponents' testimony, those objections can be raised during the depositions. The depositions should proceed in normal course, because Defendants have no valid argument for preventing any of the witnesses from testifying at the scheduled depositions.

### b. The non-competition provision invalidates the entire Agreements as to Mr. Butler and Mr. Inscoe

The non-competition provision, section 4A of Mr. Butler and Mr. Inscoe's agreements, invalidate the agreements in their entirety, and, these agreements are therefore, unenforceable. The Tennessee Rules of Professional Conduct forbid non-competition agreements for lawyers. Rule 5.6 provides: "A lawyer shall not participate in offering or making … a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship…." *See also Spiegel,* 811 S.W.2d 528 (Tenn. 1991)(finding provision of agreement that denied deferred compensation to departing shareholders who continued to practice law to be void as against the public policy of Tennessee); *Arena*, 233 S.W.3d 809 (Tenn. Ct. App. 2006)(finding agreement containing significant economic disincentive to practice law in Davidson County following voluntary withdrawal from law firm to be an impermissible restraint on the practice of law). Counsel for the moving Defendants was made aware of that issue by Counsel for Plaintiffs, both during and after the telephonic conference on March 9, 2018. Knowing the unenforceability of such a provision, Defendants now make a vague reference to the severability clause in their Motion. *See* DE 130 at p.5.

The severability clause found in paragraph 6.C of each agreement is also unenforceable because it is a mere illusory promise. The clause gives CASTLE LAW GROUP the "unilateral right and authority to modify, revise or amend" any clause found to be "invalid, illegal or contrary to the Rules of Conduct." (DE 130-1 at 6.C). Given that CASTLE LAW GROUP, pursuant to the severability provision, can simply rewrite the agreement anyway it sees fit, the severability clause is too indefinite to be enforceable. *See Rode Oil Co. v. Lamar Advert. Co.*, No. W2007-02017-COA-R3-CV, 2008 Tenn. App. LEXIS 532, at *33 (Ct. App. Sep. 18, 2008) (a "promise may also be illusory if it is too indefinite to be enforceable"); *see also Peleg v. Neiman Marcus Grp., Inc.*,

24

204 Cal. App. 4th 1425, 1461, 140 Cal. Rptr. 3d 38, 64 (2012) ("An employer's unrestricted right to amend, modify, or terminate an arbitration agreement at any time renders the agreement illusory."); *Ally Fin. Inc. v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 43 (Bankr. S.D.N.Y. 2015) ("the power to unilaterally amend contractual provisions without limitations could give rise to an illusory contract"). Moreover, CASTLE LAW GROUP, through the severability clause, has usurped the authority of the court to make the determination as to which provisions in the Agreement violate the law and must, therefore, be severed or stricken from the Agreement. The severability clause is illusory and unenforceable. Accordingly, the unlawful non-competition provision is not severable, and thus, the entire agreement is void and unenforceable as it is contrary to Tennessee law.

WHEREFORE, because Defendants have failed to identify any attorney client privileged information sought, the documents requested and testimony to be adduced do not encompass communications between a client and an attorney in which legal advice is sought and thus are outside the scope of the attorney client privilege. Also, the employment agreements cannot thwart civil discovery because they violate both Tennessee law and public policy. Plaintiffs respectfully request this Court to summarily deny Defendants' Motion for Protective Order, order the depositions to proceed forthwith as scheduled, and award Plaintiffs their fees and costs incurred in opposing this Motion, and any other relief as the Court sees fit.

Respectfully submitted,

*/s/        Alfred J. Bennington, Jr.*
**ALFRED J. BENNINGTON, JR., ESQ.**
(Pro Hac Vice)
Florida Bar No. 0404985
Email: bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
(Pro Hac Vice)
Florida Bar No. 556361

25

Email: grubin@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone:  (407) 423-3200
Facsimile:   (407) 425-8316

and

**R. EDDIE WAYLAND, BPR 6045**
Email: rew@kingballow.com
**LAURA M. MALLORY, BPR 31917**
Email: lmallory@kingballow.com
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: (615) 259-3456
Facsimile:  (888) 688-0482
*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2018, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the Court's CM/ECF filing system, which will serve a copy on all CM/ECF Participant parties of record, and served via U.S. Mail, postage prepaid, upon all of the non-CM/ECF participants:

| CM/ECF PARTICIPANTS: | |
|---|---|
| Mark T. Freeman, Esq.<br>2126 21st Avenue South<br>Nashville, Tennessee 37212<br>mark@freemanfuson.com<br>*Counsel for Defendant, Kim Grace* | Michael H. Johnson, Esq.<br>Nathaniel K. Cherry, Esq.<br>HOWARD, TATE, SOWELL,<br>WILSON, LEATHERS &<br>JOHNSON, PLLC<br>201 Fourth Avenue, North, Suite 1900<br>Nashville, Tennessee 37219<br>mjohnson@howardtatelaw.com<br>*Counsel for Defendants, Judson Phillips,*<br>*Esq., Castle Law Group, P.C., and Donald R.*<br>*Ferguson* |
| Gregory H. Oakley, Esq.<br>OAKLEY LAW, PLLC<br>2323 21st Avenue South, Suite 502<br>Nashville, Tennessee 37212<br>goakley@oakley-law.com<br>*Counsel for Sean Austin* | John Farringer, Esq.<br>Sherrard Roe Voigt Harbison<br>160 3rd Avenue South, Suite 1100<br>Nashville, Tennessee 37201<br>*Counsel for God Cloud, LLC, Advisant, LLC,*<br>*Exxogear, LLC, Instant Merchant Group, LLC,*<br>*Kryptobit, LLC, [William] Michael Keever,*<br>*Ashley Keever, Worthington Holdings, LLC;*<br>*Castle Venture Group, LLC and Exxo Gear*<br>*Group, Inc.* |
| NON-CM/ECF PARTICIPANTS: | |
| Castle Marketing Group, LLC<br>2 International Plaza, Suite 900<br>Nashville, Tennessee 37217 | |

/s/     *Laura M. Mallory*
**LAURA M. MALLORY**

27